# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0821-19T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.H.-C.,

     Defendant,

and

W.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.G.S.H.,
a minor.

_____

Submitted August 10, 2020 – Decided August 21, 2020

Before Judges Whipple and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0181-19

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Adrienne Marie Kalosieh, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant W.H. (Walt)[1] appeals from the October 3, 2019 judgment terminating his parental rights to his daughter, M.G.S.H. (Michelle). The New Jersey Division of Child Protection and Permanency (Division) became involved with Michelle after she tested positive for opiates at birth. J.H.-C. (Jen), Michelle's mother, is not a party to this appeal. Having carefully reviewed

---

[1] Due to the confidential nature of records pertaining to the placement of a child, we use pseudonyms in lieu of actual names. See R. 1:38-3(d)(13).

the record, we affirm for the reasons explained by Judge Francine I. Axelrad in her decision issued from the bench on October 3, 2019.

Defendant raises the following issues on appeal:

POINT I: THE COURT ERRED IN HOLDING THAT [THE DIVISION] MET ITS BURDEN AS TO PRONGS ONE AND THREE OF N.J.S.A. 30:4C-15.1(A) BECAUSE IT FAILED TO [PROVE] THE PATERNAL RELATIONSHIP CAUSED HARM AND FAILED TO ASSESS [WALT]'S REFERRALS AS POTENTIAL CARETAKERS.

A. The court erred to hold that the child has been or will continue to be endangered by the parental relationship.

B. The court erred to hold the court had considered alternatives to termination of parental rights where [the Division] evaluated none of [Walt]'s relatives for placement.

1. The court erred in its presumption that [Walt] did not offer his brother, E.H., or other referents as placement resources for Michelle and its legal determination that [Walt]'s offering them is a prerequisite to [the Division's] fulfilling its statutory obligation to assess relatives for placement.

2. The court erred in holding that [the Division] met its obligation to explore alternatives to termination of [Walt]'s parental rights by assessing and ruling out [Jen]'s relatives.

Shortly after Michelle was born in August 2017, she was diagnosed with Neonatal Abstinence Syndrome, and placed in Division custody upon discharge from the hospital. The Division placed Michelle initially with her maternal grandmother, but she was subsequently removed and placed in a resource home where she remains. When Michelle was born, Jen reported E.O. was the father, and only later told the Division to take "a test and find out" if Walt was Michelle's father. Walt underwent a paternity test and as the biological father, Walt was allowed supervised-only visits with Michelle because he was subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, restrictions. After Walt underwent an evaluation by Dr. Gregory Gambone, Ph.D., Walt was referred to individual and anger management counseling, as well as parenting skills classes.

Our review of the record informs us that while Walt did have eight visits with Michelle, he could not offer himself as a custodial parent for Michelle because Megan's Law conditions of parole for a 1997 conviction precluded it. Walt's plan was for either his mother or girlfriend to help him with co-parenting Michelle. Walt did not offer viable family members who could care for Michelle as his mother needed a caretaker due to her various medical issues and Walt admitted his girlfriend had a history with the Division.

4

In the meantime, Michelle developed a strong and nurturing bond with her foster parents, who expressed their wish to adopt her. The record reflects that Michelle thrived in the home environment of her foster parents.

The matter proceeded to a guardianship trial on October 2, 2019. At the time of trial, Michelle was over two years old and had been in the home of her foster parents for almost all her life. Jen did not appear for trial, however, Walt was present and represented by counsel.

The Division called caseworker Leanna Torres, a Division adoption caseworker, who testified about the Division's involvement with the family and the efforts made on their behalf. The Division also called Dr. Linda Jeffrey, Ph.D., who testified about her psychological evaluation of Walt, her bonding evaluations between Walt and Michelle, as well as her bonding evaluations between the resource parents and Michelle. Walt also testified on his own behalf.

Based on the Division records, expert reports, as well as testimony from the experts and the Division case worker, Judge Axelrad found the Division proved all four prongs of the best interest test under N.J.S.A. 30:4C-15.1(a) and terminated both parents' parental rights.

A-0821-19T3

While Walt argues he was kept "in the dark" about his paternity, and the Division impeded his efforts to make himself available to parent Michelle, the family court found reasonable efforts were made and similarly rejected Walt's argument the Division did not explore his brother and mother as potential placement options.

Our review of that decision is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We defer to the judge's expertise as a Family Part judge, id. at 412-13, and are bound by her factual findings so long as they are supported by sufficient credible evidence, N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). In her thorough well-reasoned decision from the bench, Judge Axelrad credited the testimony of Dr. Jeffrey, who opined Walt was unable to parent Michelle, given his criminal history, mental health, substance abuse issues, financial instability, and Megan's Law status. The judge also found, contrary to Walt's assertions, that the Division explored reasonable alternatives to termination, including placement options Walt offered, which were ruled out. Additionally, the judge found Michelle bonded with her resource parents and severance of that bond would harm her. We conclude the

A-0821-19T3

factual findings of Judge Axelrad are fully supported by the record and the legal conclusions drawn therefrom are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-0821-19T3